```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TARA MORGAN,**

    **Plaintiff,**

  v.                                      **CIVIL NO. 1:21-CV-141
                                                  (KLEEH)**

**MYLAN PHARMACEUTICALS INC. and
LOCAL UNION 8-957,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER
GRANTING LOCAL UNION 8-957'S MOTION TO DISMISS [ECF NO. 9]**

Pending before the Court is a motion to dismiss filed by Defendant Local Union 8-957 (the "Union"). For the reasons discussed herein, the Court **GRANTS** the motion.

## I.  BACKGROUND

This case involves allegations of race, disability, and sex discrimination. In short, Plaintiff Tara Morgan ("Plaintiff"), an African American woman with an alleged disability, claims that Mylan Pharmaceuticals Inc. ("Mylan") terminated her employment due to her race and disability. She claims that she went to the Union (of which she was a member) for help, and the Union subjected her to sexual harassment.

Based on these facts, Plaintiff originally brought the following causes of action:

- (I) Violations of the Human Rights Act and Sexual Harassment (against Mylan and the

Union);

- (II/III) Violations of the West Virginia Human Rights Act Based Upon Sexual Harassment, both "Quid Pro Quo" and "Hostile Work Environment" (against Mylan and the Union);

- (IV) Negligent Infliction of Emotional Distress (against Mylan and the Union);

- (V) Negligent Hiring Retention (seemingly against only the Union); and

- (VI) Unfair Labor Practice Violation / Breach of Duty of Good Faith and Fair Dealing (seemingly against only the Union).

The case was originally filed in the Circuit Court of Monongalia County, West Virginia, and it was removed to this Court on November 23, 2021. The Union's motion to dismiss was filed on December 21, 2021. It is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted[.]" In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

**MEMORANDUM OPINION AND ORDER**
**GRANTING LOCAL UNION 8-957'S MOTION TO DISMISS [ECF NO. 9]**

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of his claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

### III. DISCUSSION

The Union moved to dismiss all six claims against it. In Plaintiff's response, she agreed to dismiss Counts Three, Four, and Five against the Union. As the Union points out, this may have been a typographical error on Plaintiff's part. Plaintiff's response addresses only sexual harassment allegations, which are asserted in Counts One, Two, and Three, and the response does not address Count Six. Thus, Plaintiff may have intended to agree to dismissal of Counts Four, Five, and Six. To err on the side of

caution, the Court will address Counts One, Two, Three, and Six herein.

### A. Sexual Harassment: **Quid Pro Quo** and Hostile Work Environment

Plaintiff raises sexual harassment allegations against the Union in Counts One,[1] Two, and Three. The Union argues that all sexual harassment claims against it should be dismissed as a matter of law because Plaintiff has failed to plead that the Union's actions were "severe or pervasive."

West Virginia law recognizes two types of sexual harassment under the West Virginia Human Rights Act ("WVHRA"): quid pro quo and hostile work environment. See Hanlon v. Chambers, 464 S.E.2d 741, 749 (W. Va. 1995).[2] The Supreme Court of Appeals of West Virginia has held that a claim of quid pro quo sexual harassment in the workplace requires

> (1) that the complainant belongs to a protected class;
>
> (2) that the complainant was subject to an unwelcome sexual advance by an employer, or an agent of the employer who appears to have the authority to influence vital job decisions; and

---

[1] Count One also raises, solely against Mylan, a claim of discrimination on the basis of race and/or disability.
[2] W. Va. Code § 5-11-9(3) makes is unlawful "for any labor organization because of . . . sex . . . to deny full and equal membership rights to any individual or otherwise to discriminate against such individual with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment[.]"

4

>   (3) the complainant's reaction to the advancement was expressly or impliedly linked by the employer or the employer's agent to tangible aspects of employment.

Westmoreland Coal Co. v. W. Va. Human Rights Comm'n, 382 S.E.2d 562, 566–67 (W. Va. 1989). To establish sexual harassment based on a hostile work environment, a plaintiff must show

>   (1) the subject conduct was unwelcome;
>
>   (2) it was based on the sex of the plaintiff;
>
>   (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and
>
>   (4) it was imputable on some factual basis to the employer.

Hanlon, 464 S.E.2d at 748–49 (citations and quotation marks omitted).

The Supreme Court of Appeals of West Virginia has "consistently looked to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964 . . . when interpreting provisions of our state's human rights statutes." W. Va. Human Rights Comm'n v. Wilson Estates, Inc., 503 S.E.2d 6, 12 (W. Va. 1998). West Virginia has a "longstanding practice of applying the same analytical framework used by the federal courts when deciding cases arising under the Human Rights Act[.]" Id. at 12.

"[I]n all cases the harassment complained of must be sufficiently severe or pervasive." W. Va. Code R. § 77-4-2.3; see

also Westmoreland Coal Co., 382 S.E.2d at 565 n.3 ("For either type of sexual harassment to be actionable, the harassment must be sufficiently severe or pervasive.") (citation omitted).  The plaintiff must show not only that the subject perceived the conduct to be severe or pervasive, but also that a reasonable person in her position would similarly find the conduct severe or pervasive. See Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (citation omitted).  For conduct to be actionable, it "must be [so] extreme [as] to amount to a change in the terms and conditions of employment," and "plaintiffs must clear a high bar to satisfy the severe or pervasive test." Penn v. Citizens Telecom Servs. Co., LLC, 999 F. Supp. 2d 888, 897 (S.D.W. Va. 2014).

West Virginia regulations offer guidance to aid courts in determining whether sexual harassment is severe or pervasive.  The Court is to consider

> 2.4.1. Whether it involved unwelcome physical touching;
>
> 2.4.2. Whether it involved verbal abuse of an offensive or threatening nature;
>
> 2.4.3. Whether it involved unwelcome and consistent sexual innuendo or physical contact; and
>
> 2.4.4. The frequency of the unwelcome and offensive encounters.

W. Va. Code R. § 77-4-2.4.  This is consistent with how the United

States Court of Appeals for the Fourth Circuit has held that "severe or pervasive" should be assessed under Title VII:

> In determining whether the harassment alleged was sufficiently severe or pervasive, we must "look[] at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the] employee's work performance." Harris, 510 U.S. at 23, 114 S.Ct. 367.

Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 304 (4th Cir. 2019).

It is well-settled that Title VII is not a "general civility code." EEOC v. Fairbrook Med. Clinic, Pa., 609 F.3d 320, 328 (4th Cir. 2010) (citation omitted). "[W]hile no one condones boorishness, there is a line between what can justifiably be called sexual harassment and what is merely crude behavior." Id. (citing Ziskie v. Mineta, 547 U.S. 220, 228 (4th Cir. 2008)). "Activities like simple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "If they did, courts would be embroiled in never-ending litigation and impossible attempts to eradicate the ineradicable, and employers would be encouraged 'to adopt authoritarian traits' to purge their workplaces of poor taste."

Id. (citing EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 318 (4th Cir. 2008)).

In Singleton v. Department of Correctional Education, the Fourth Circuit found that offensive comments and showing sexual interest were insufficient to meet the severe or pervasive test:

> [W]e conclude that Mrs. Singleton's allegations that Shinault made offensive comments, showed her unwanted attention that made her uncomfortable, and continuously expressed a sexual interest in her do not meet the high standard set forth under Title VII. The conduct that she complains of, though boorish and offensive, is more comparable to the kind of rude behavior, teasing, and offhand comments that we have held are not sufficiently severe and pervasive to constitute actionable sexual harassment. See, e.g., Hartsell v. Duplex Prod., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (holding that comments about a woman's looks and comments demeaning to women were not sufficiently severe and pervasive). Mrs. Singleton does not allege that Shinault ever requested a sexual act, touched her inappropriately, discussed sexual subjects, showed her obscene materials, told her vulgar jokes, or threatened her. Nor does Mrs. Singleton allege that his behavior interfered with her ability to perform her job.

115 F. App'x 119, 122 (4th Cir. 2004) (unpublished).

The Supreme Court of Appeals of West Virginia has noted that "[a]s a general rule 'more than a few isolated incidents are required'" to constitute pervasive harassment. Fairmont Specialty Servs. v. W. Va. Human Rights Comm'n, 522 S.E.2d 180, 190 n.9 (W.

Va. 1999) (citations omitted); see also Sunbelt Rentals, Inc., 521 F.3d at 318 ("No employer can lightly be held liable for single or scattered incidents."). The Fourth Circuit has found that a one-time slur does not meet the "severe or pervasive" test. See Lacy v. Amtrak, 205 F.3d 1333, at *4 (4th Cir. 2000) (unpublished).

Here, Mylan had given Plaintiff a "final warning" while she was out for a medical appointment. See Compl., ECF No. 3, at ¶ 11. The Union told Plaintiff that the final warning was in error and not to worry about it. Id. ¶ 12. The Union told her that she would not lose her job and promised to provide her with representation if Mylan made efforts to terminate her employment. Id. ¶ 13. Mylan then did terminate her employment. Id. ¶ 14.

When Plaintiff went to the Union after her employment was terminated, she was sexually harassed by male Union representatives. Id. ¶¶ 14, 20. Instead of offering to help her get her job back, Union representatives made comments to Plaintiff about a photograph of her in a bikini that was on her Facebook page. Id. ¶ 14. Plaintiff was humiliated and embarrassed. Id. When Plaintiff tried to get them to stop, "the Union representatives stopped calling her about her termination and failed to represent her in her efforts to get her job back." Id.

Based on these facts, Plaintiff asserts that "but for [her] sex she would not have been subject to sexual harassment and denied

help and relief" from the Union. Id. ¶ 21. Plaintiff asserts that she "was constantly harassed sexually, she complained about sexual harassment and was subject to sexual comments and jokes when she was trying to have her job reinstated." Id. The actions were unwelcome. Id. ¶ 37.

Plaintiff's allegations do not meet the severe or pervasive standard. There was no physical touching. There were no threatening comments. While the comments were unwelcome, they are not alleged to be frequent. These comments are more akin to the "one-time slur" discussed by the Fourth Circuit in Lacy, 205 F.3d 1333, at *4, or "simple teasing" as contemplated in Fairbrook Med. Clinic, 609 F.3d 320 at 328. The comments, as pled, occurred during a single, isolated incident. See Sunbelt Rentals, 521 F.3d at 318. Plaintiff does not bring a retaliation claim. As such, the motion to dismiss is granted with respect to the sexual harassment allegations in Counts One, Two, and Three.

### B. Unfair Labor Practice Violation, Breach of Duty of Good Faith and Fair Dealing

In Count Six, Plaintiff asserts that the Union engaged in unfair labor practices and breached the duty of good faith and fair dealing. The Union moved to dismiss, arguing that the claim is barred by the statute of limitations. Plaintiff ignored this argument, and ignored this claim entirely, in her Response.

"It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). Further,

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter . . . shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

Id. § 185(b).

Claims of a union's violation of the duty of fair representation are subject to a six-month statute of limitations. See DelCostello v. Teamsters, 462 U.S. 151, 169–72 (1983). This period begins to run "from the time when [a plaintiff] discovered [her] injury or should have discovered it through the exercise of reasonable diligence." Smith v. Steelworkers Local 7898, 834 F.2d 93, 95 (4th Cir. 1987). A court may grant a motion to dismiss based on an affirmative defense if all necessary facts "clearly appear[] on the face of the complaint." Goodman v. Praxair, 494 F.3d 458, 464 (4th Cir. 2007).

Plaintiff argues that the Union violated the statute by

Case 1:21-cv-00141-TSK Document 49 Filed 02/15/23 Page 12 of 12 PageID #: 341

**MORGAN V. MYLAN ET AL.** 1:21-CV-141
**MEMORANDUM OPINION AND ORDER**
**GRANTING LOCAL UNION 8-957'S MOTION TO DISMISS [ECF NO. 9]**

sexually harassing Plaintiff and failing to represent her in her efforts to have her employment reinstated. See Compl., ECF No. 3, at ¶ 54. Plaintiff alleges that she was sexually harassed and terminated on or about October 21, 2019. Id. at ¶ 3. She also alleges that after the harassment, the Union failed to make efforts to secure her job. Id. ¶ 54. Plaintiff filed her lawsuit nearly two years after that date and, therefore, failed to comply with the six-month statute of limitations. She has produced no excuse for this or argument in opposition to the Union's motion, so the Court grants the motion to dismiss with respect to the unfair labor standards allegations in Count Six.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Union's motion to dismiss [ECF No. 9]. All claims against the Union are **DISMISSED WITH PREJUDICE.** The Clerk is **DIRECTED** to enter judgment in favor of the Union, consistent with this Memorandum Opinion and Order.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: February 15, 2023

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA